## APPEAL OF S. E. OVERTON CO.

Docket No. 565.   Submitted April 12, 1925.   Decided November 4, 1925.

> Under an agreement with the Board of Trade of South Haven, Michigan, the taxpayer received a manufacturing plant in consideration of its agreement to expend a certain amount in pay roll over a balance of years, or in lieu thereof, to pay the value then agreed upon. *Held*, that the portion of the pay roll allocated to the discharge of the obligation under the contract was a capital expenditure by the taxpayer and not deductible in determining net income.

*Oscar E. Waer, Esq.*, for the taxpayer.
*Laurence Graves, Esq.*, for the Commissioner.

Before James, Littleton, Smith, and Trussell.

### FINDINGS OF FACT.

In January, 1908, S. E. Overton was engaged in carrying on a manufacturing business in Chicago, Ill. He was then considering a change of location for his business and was desirous of locating such business in the City of South Haven, Mich. In order to induce him to locate his business there, the South Haven Board of Trade entered into an agreement with him under date of January 3, 1908, by the terms of which the board of trade undertook to procure a manufacturing site of not less than 15,000 square feet and to erect and complete buildings suitable for the use of Overton's business. The board of trade also obligated itself to furnish to Overton electric power for manufacturing purposes of not less than 30 horsepower, at a rate of not to exceed $1.75 per month per horsepower installed. This agreement also contained various stipulations and conditions, among which were: That Overton was to move his business to the City of South Haven and to maintain it there for a period of not less than six years, and to conduct such manufacturing business in such a manner that there would be employed a number of employees the pay roll for which during the period of the agreement should equal or exceed twenty-one and one-half times the amount paid out by the board of trade for building and equipment.

In pursuance of this agreement the board of trade procured an acceptable site and erected and equipped a building satisfactory to Overton at a cost of $9,600. The building and equipment were completed on or before October 27, 1908. All the terms of the agreement on the part of each party thereto were satisfactorily completed and performed so far as the same could be performed up to that time. Overton accepted the site, building, and equipment, moved his factory from Chicago to South Haven, and received from the board of trade proper conveyances of the manufacturing site, buildings, and equipment.

During the period between January 3, 1908, and October 27, 1908, Overton caused his business to be incorporated and thereafter to be operated by a corporation organized under the laws of Michigan

and known as S. E. Overton Co. In carrying out the terms of the agreement for the furnishing of electric power, such power was furnished by a municipally owned electric power plant operated by the City of South Haven. The agreement to furnish electric power to Overton and his successors and assigns was continuously carried out until some time during the year 1912, when the growth of the city and its business had reached such a stage that the municipally owned electric power plant found that the uses of electricity for public and domestic lighting purposes consumed its entire product and that it was unable to continue to furnish power for manufacturing purposes, and it thereupon discontinued the supply of power to the said Overton manufacturing plant. The S. E. Overton Co., successor of S. E. Overton, thereupon constructed its own electric power plant. This situation gave rise to a controversy between the Overton Co. and the board of trade, the former claiming that the latter had failed to complete its agreement respecting the furnishing of electric power and that the Overton Co. thereby suffered losses and expenses in the construction and operation of its own power plant.

No settlement of the controversy between the Overton Co. and the board of trade respecting the failure to furnish electric power was ever directly arrived at, but later, and on or about the 24th day of May, 1916, the said S. E. Overton Co. and the South Haven Board of Trade entered into a new agreement then reduced to writing and properly executed. This agreement recited, among other things, that the South Haven Board of Trade was desirous of increasing the number of employees of the Overton Co.'s plant, and of increasing the amount of the annual pay roll thereof; that it was for the mutual benefit and advantage of both parties to the agreement that the number of employees and the total wage disbursements should be largely increased, and that, for the purpose of accomplishing the desired result, the board of trade would furnish the funds necessary to make an addition to the plant of the Overton Co., which funds should all be expended in the construction of additional buildings and manufacturing equipment on the site now owned and occupied by the said Overton Co., provided, that the board of trade should not contribute toward such additional buildings and equipment an amount in excess of $10,000. In this same agreement the Overton Co. pledged itself to continue to operate its factory in the City of South Haven for a period of not less than five years and during such five years to disburse in wages a total amount equal to twenty-one times the amount now to be contributed by the board of trade toward the building of the Overton Co.'s manufacturing building and equipment.

This agreement was completely performed, so far as additions to building and equipment were concerned, on or before August 31,

1916, and the board of trade disbursed the said sum of $10,000 toward the payment of the cost of the erection of additional manufacturing buildings and the installation therein of the necessary equipment. The agreement also specifically provided that the S. E. Overton Co. should give to the board of trade a proper bond, the obligation of which should be that the Overton Co. would continue to operate its plant in the City of South Haven, and during the period of five years, or such extensions thereof as might become necessary under the terms of the agreement, disburse in wages and pay roll a total amount equal to twenty-one times the $10,000 furnished by the board of trade, and that the Overton Co. could at any time be relieved of this obligation by reimbursing the said board of trade in a sum equal to 5 per cent of such guarantee of wages and pay-roll disbursements as had not been up to that time actually disbursed.

This bond was never given. In lieu thereof, however, the said Overton Co. executed and delivered to the board of trade an instrument bearing a $2 internal revenue documentary stamp canceled, and in words and figures as follows:

On or before Five Years from the date hereof, for value received, the S. E. Overton Company, a corporation under the Laws of the State of Michigan, promises to pay to the South Haven Board of Trade, a corporation under the Laws of the State of Michigan, the sum of Ten Thousand Dollars, with interest at six per cent after due. This note is given to secure the faithful performance, by the maker hereof, of the conditions and terms of an agreement this day entered into between the parties hereto; and it is agreed and understood that, at the end of each year of the five year period mentioned and provided for in and by said agreement, there shall be endorsed hereon a sum equal to five per cent of the amount of wages in said agreement provided to be paid by the maker and which shall have been actually paid out by second party under said agreement during the preceding year, until the end of the fifth year; and at the end of said five year period, if the maker shall not then have paid out the entire amount of wages in said agreement provided to be paid by it, then the maker hereof shall pay the payee herein named, in full satisfaction of this note, five per cent of the said wages provided to be paid and which shall then remain unpaid.

The maker has the right to be released from the terms of this note at any time on the payment to the maker of five per cent of the amount of wages in said agreement provided for and which shall then remain unpaid.

On the back of said instrument there appears the following indorsement:

Credit as per statement Aug. 1, 1917_____ $2,233.01
Credit as per statement Aug. 1, 1918_____ 1,462.92

The Overton Co. kept a record of its pay rolls with a view of determining whether or not it was employing labor in accordance with the said contract of 1916 by debiting the board of trade 5 per cent of the pay roll during the years 1916 to 1919, inclusive, as follows:

| | |
|---|---|
| 1916 | $1,001.79 |
| 1917 | 1,181.21 |
| 1918 | 1,512.93 |
| 1919 | 6,304.07 |
| Total | 10,000.00 |

In auditing the income and profits-tax returns of the S. E. Overton Co. for the calendar years 1918 and 1919, the Commissioner added to gross income for the year 1918, $1,512.93, for the year 1919, $6,304.07, and, on the basis of increased taxable income, found the deficiencies from which this appeal is taken.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

JAMES: The sole issue in this appeal is whether the taxpayer was in receipt of income in the years in question as a result of its compliance with the terms of the contract, fully set forth in the foregoing findings of fact, which it entered into with the South Haven Board of Trade.

In our opinion the taxpayer, under that contract, acquired $10,000 of capital assets, which were paid for by allocating 5 per cent of the taxpayer's pay roll over the years in question to the agreed value thereof until such amounts totaled $10,000. In fact, the South Haven Board of Trade discharged 5 per cent of the taxpayer's pay-roll cost by relieving the taxpayer of the necessity of paying an equivalent amount on account of capital assets theretofore transferred to it upon condition either that such pay roll expenditures would be made or that the taxpayer would pay for the assets direct. Under these circumstances, 5 per cent of the taxpayer's pay-roll payments constitute capital expenditures and may not be deducted in determining net income.

LITTLETON, SMITH, and TRUSSELL dissenting.